1  JASON R. FLANDERS, SBN 238007
   AQUA TERRA AERIS (ATA) LAW GROUP
2  490 43rd Street, Suite 108
   Oakland, CA 94609
3  Telephone: (415) 568-5200
   Email:  jrf@atalawgroup.com
4

5  M. BENJAMIN EICHENBERG, SBN 270893
   SAN FRANCISCO BAYKEEPER
6  1736 Franklin Street, Suite 800
   Oakland, California 94612
7  Telephone: (510) 735-9700
   Facsimile: (510) 735-9160
8  Email: ben@baykeeper.org

9
   **Attorneys for Plaintiff**
10 **San Francisco Baykeeper**

11              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
12

13

14 SAN FRANCISCO BAYKEEPER                  | Case No.:

15              Plaintiff,                   | **COMPLAINT FOR CIVIL PENALTIES
         vs.                                 | AND INJUNCTIVE AND DECLARATORY
16 SONOMA HORSE PARK, HEADLANDS             | RELIEF FOR VIOLATION OF WATER
   MANAGEMENT, INC., BURGUNDY FARMS,        | POLLUTION CONTROL ACT (33 U.S.C. §
17 LLC, and HOWARD HERMAN                   | 1311), AND RESOURCE CONVERVATION
                                            | AND RECOVERY ACT (42 U.S.C. §
18              Defendants.                  | 6972(a)(1)(B))**

19

20

21

22

23

24

25

26

27

28

       **COMPLAINT FOR CIVIL PENALTIES AND INJUNCTIVE AND DECLARATORY
                                      RELIEF**

**INTRODUCTION**

1.      Sonoma Horse Park, Sonoma Horse Park doing business as Riverside Equestrian Center, Headlands Management Inc., Howard Herman, and Burgundy Farms LLC (collectively "Defendants") own and operate Sonoma Horse Park, and/or Sonoma Horse Park doing Business as Riverside Equestrian Center.

2.       Sonoma Horse Park is located at 7600 Lakeville Highway, Petaluma, CA 94954, and encompasses over 70 acres of land on the bank of the Petaluma River (the "Facility").

3.      Plaintiff is informed and believes that Sonoma Horse Park, and/or Sonoma Horse Park doing business as Riverside Equestrian Center, and/or Burgundy Farms provides equine boarding accommodations, while Headlands Management, Inc., has managed all equine shows at Sonoma Horse Park since 2010, and manages multiple equestrian competitions and shows at Sonoma Horse Park throughout the year.

4.      Plaintiff is informed and believes that as a result of Defendants' operations at Sonoma Horse Park, the facility has discharged and continues to discharge polluted process wastewater and industrial stormwater into the Petaluma River without a National Pollutant Discharge Elimination System permit in violation of section 301(a) of Clean Water Act ("CWA"), 33 U.S.C. § 1311.

5.      Plaintiff is informed and believes that through their operations at Sonoma Horse Park, Defendants have caused and contributed and continue to cause and contribute to the handling, storage, treatment, and/or disposal of solid wastes, which present an imminent and substantial endangerment to health and the environment in violation of the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B).

**JURISDICTION AND VENUE**

6.      This is a civil suit brought pursuant to the CWA 33 USC § 1311, and RCRA 42 U.S.C. §§ 6945(a), 6903(14).

7.      The Court has jurisdiction in this action pursuant to the citizen suit provisions of the CWA and RCRA, 33 U.S.C. § 1365(a)(1), 42 U.S.C. § 6972(a)(1)(B), and pursuant to 28 U.S.C. § 1331 (providing jurisdiction for actions arising under the laws of the United States).

8.      On March 28, 2019, Plaintiff San Francisco Baykeeper ("Baykeeper" or "Plaintiff") provided notice of Defendants' violations of the CWA and RCRA, and of Plaintiff's intention to file suit against Defendants, to the Administrator of the United States Environmental protection Agency ("EPA"), Andrew Wheeler; the U.S. Attorney General, William Barr; the Acting Administrator of EPA Region IX, Mike Stoker; the Executive Director of the State Water Resources Control Board ("State Water Board"), Eileen Sobeck; the Acting Executive Officer of the Regional Water Quality Control Board, Thomas Mumley; the Director of the California Department of Resources Recycling; and to Defendants' registered Agent for Service of Process, as required by 33 U.S.C. § 1365(b)(1)(A) and 42 U.S.C. § 6972(b)(2). A true and correct copy of the March 28, 2019 Notice Letter ("Notice Letter") is attached as "Exhibit A" and incorporated by reference herein.

9.      More than ninety (90) days have passed since the Notice Letter was mailed to Defendants and the state and federal agencies. Neither EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint.  No claim in this action is barred by any prior administrative action pursuant to section 309(g) of the CWA, 33 U.S.C. § 1319(g), or under RCRA, 42 U.S.C. § 6972(b).

10.      The Court has venue pursuant to 28 U.S.C. § 1391. At least one Defendant resides in the District, and all Defendants reside in the State of California, where the District is located. *Id.* at § 1391(b)(1).

11.      Alternatively, venue is proper here because the events giving rise to the claim, namely the unlawful discharges and disposals at Sonoma Horse Park, occurred and are occurring within the District. *Id.*at § 1391(b)(2).

12.      The relief sought herein will redress the harms to Plaintiff caused by Defendants' activities.

### THE PARTIES

### PLAINTIFF

13.      San Francisco Baykeeper is an environmental group, organized as a non-profit corporation in accordance with the laws of the State of California, whose mission is to protect San Francisco Bay from the biggest threats and hold polluters accountable. Baykeeper's approximately

1,500 members live and/or recreate in and around the San Francisco Bay area. Baykeeper works to stop pollution, in part, by monitoring and investigating pollution and its sources with the end goal of a Bay that is free from harmful pollution and safe for recreation with resilient, healthy shorelines. Additionally, Baykeeper actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, initiates enforcement actions on behalf of itself and its members. San Francisco Baykeeper's offices are located at 1736 Franklin Street, Suite 800, Oakland, CA, 94612.

14.    Baykeeper and its individual members have an interest in the preservation and use of waters in and around San Francisco Bay, including, but not limited to the Pacific Ocean, San Francisco Bay, San Pablo Bay, the Petaluma River, and their tributaries. Specifically, Baykeeper's members sail, swim, picnic, fish, hike, surf, paddle, standup paddleboard, kayak, wade, bike, and enjoy the wildlife in and around these waters, including the reach at issue in this Complaint. The actions of Defendants individually, collectively, and in combination with the activities of other landowners adjacent to the Petaluma River, result in numerous injuries to Baykeeper's interests, such as: loss, destruction, or damage to wetlands and waterways; diminished aesthetic enjoyment; loss of open space and habitat for wildlife, including wading birds and federally protected species; degraded water quality; and diminished quality of life. The ability of Baykeeper's members to sail, swim, picnic, fish, hike, surf, paddle, standup paddleboard, kayak, wade, bike, and enjoy the wildlife in and around these waters, and to use and enjoy the Petaluma River, San Pablo Bay, and San Francisco Bay, is harmed by Defendants' violations of law

**DEFENDANTS**

15.    Plaintiff is informed and believes that Defendants are the owners and operators of Sonoma Horse Park, and/or Sonoma Horse Park doing Business as Riverside Equestrian Center, located at 7600 Lakeville Highway, Petaluma, CA 94954.

16.    Plaintiff is informed and believes and thereon alleges that Howard Herman owns and operates the Facility.

17.    Plaintiff is informed and believes that Sonoma Horse Park is a business corporation incorporated under the laws of the State of California, and is located at 7600 Lakeville Highway, Petaluma, CA 94954.

18.    Plaintiff is informed and believes that Sonoma Horse Park does business under the fictitious business name Riverside Equestrian Center, also located at 7600 Lakeville Highway, Petaluma, CA 94954, and has been owned and/or operated by Howard L. Herman and/or the Herman family since 1997.

19.    Plaintiff is informed and believes that Burgundy Farms, LLC was formed as a limited liability corporation under the laws of the State of California, is owned and operated by Meredith M. Herman, and has operated as an equine sales, training, and boarding entity at Sonoma Horse Park, located at 7600 Lakeville Highway, Petaluma, CA 94954, since at least 2013.

20.    Plaintiff is informed and believes that Sonoma Horse Park, and/or Sonoma Horse Park doing business as Riverside Equestrian Center, and/or Burgundy Farms provides equine boarding accommodations to approximately 250 horses for up to 365 days a year.

21.    Plaintiff is informed and believes that Headlands Management, Inc., has managed all equine shows at Sonoma Horse Park since 2010, is incorporated under the Laws of the State of California, and is owned and operated by Sally Hudson.

22.    Plaintiff is informed and believes that Headlands Management, Inc., manages multiple equestrian competitions and shows at Sonoma Horse Park throughout the year.

23.    Plaintiff is informed and believes that Sonoma Horse Park can accommodate up to 2,000 horses per equestrian competition or show.

24.    Plaintiff is informed and believes that Sonoma Horse Park is the largest horse boarding facility in Northern California and the second largest in the western United States.

## LEGAL BACKGROUND
### THE CLEAN WATER ACT

25.    Section 301 of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into waters of the United States by any person from a point source without a National Pollutant Discharge Elimination System (NPDES) permit issued pursuant to the CWA, 33 U.S.C. § 1342.

26.    The CWA defines point sources to include concentrated animal feeding operations ("CAFOs"). 33 U.S.C. § 1362(14); 40 CFR § 122.23(a).

ATA Law Group
490 43rd Street, Suite 108
Oakland CA 94608
916-202-3018

27.    The CWA also prohibits unpermitted pollutant discharges associated with industrial activity and composed entirely of stormwater. 33 U.S.C. §§ 1311, 1342(p)(2)(B); 40 C.F.R. § 122.26.

28.    Stormwater discharges from CAFOs are subject to permitting requirements because CAFOs are defined as industrial activities. 40 C.F.R. §§ 122.26(b)(14)(i), 122.23.

29.    To constitute a CAFO, a facility must first be classified as an Animal Feeding Operation ("AFO"). An AFO is defined as a lot or facility where "(i) Animals . . . have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period, and (ii) Crops, vegetation, forage growth, or post-harvest residues are not sustained in the normal growing season over any portion of the lot or facility." 40 C.F.R. § 122.23.

30.    Once classified as an AFO, a facility may be subsequently classified as either a "Large CAFO" or a "Medium CAFO." 40 C.F.R. § 122.23(4), (6).

31.    To be classified as a "Large CAFO" for horses, there must be 500 horses or more at the facility. 40 C.F.R. § 122.23(4)(vi).

32.    A facility is  classified as a "Medium CAFO" if it has 150-499 horses and it either: (1) discharges "into waters of the United States through a man-made ditch, flushing system, or other similar man-made device"; or (2) "[p]ollutants are discharged directly into waters of the United States which originate outside of and pass over, across, or through the facility or otherwise come into direct contact with the animals confined in the operation." 40 C.F.R. § 122.23(6).

33.    The CWA defines "pollutants" to encompass waste typically produced at CAFOs, including manure and "process wastewater." 33 U.S.C. § 1362(6); 40 C.F.R. § 122.2.

34.    Process wastewater is defined as "water directly or indirectly used in the operation of the AFO for any or all of the following: spillage or overflow from animal or poultry watering systems; washing, cleaning, or flushing pens, barns, manure pits, or other AFO facilities; direct contact swimming, washing, or spray cooling of animals; or dust control. Process wastewater also includes any water which comes into contact with any raw materials, products, or byproducts including manure, litter, feed, milk, eggs or bedding." 40 C.F.R. § 122.23(b)(7).

35.    CAFOs that discharge pollutants to a water of the U.S., either directly or via stormwater, must have an NPDES permit at the time of the discharge. 40 C.F.R. § 122.23(f).

ATA Law Group
490 43rd Street, Suite 108
Oakland CA 94608
916-202-3018

36. Every discharge of pollutants from a CAFO into waters of the United States without an NPDES permit is a violation of section 301(a) of the CWA. 33 U.S.C.A. § 1311.

37. In California, the State Board has elected to issue a single, statewide general permit ("Industrial General Permit") applicable to all stormwater discharges associated with industrial activity. On April 17, 1997, the State Board adopted the 1997 Permit, which was in effect through June 30, 2015. On July 1, 2015, the 2015 Permit became effective and superseded the 1997 Permit, except for enforcement purposes.

38. To discharge stormwater lawfully in California, industrial dischargers (i.e., facility operators) must secure coverage under the Industrial General Permit by filing a notice of intent and complying with its terms, or obtaining and complying with an individual NPDES permit. 1997 Permit, p. II, VII; 2015 Permit, Section I(A) (Findings 8, 12), Attachment C (defining "discharger").

39. Stormwater discharges from large CAFOs are subject to permitting requirements because they are defined as industrial activities. 40 C.F.R. § 122.26; 2015 Permit, Attachment A.1.

40. The Industrial General Permit is an NPDES permit issued pursuant to CWA section 402(p), 33 U.S.C. § 1342(p). Violations of the Industrial General Permit are also violations of the CWA. 1997 Permit, Section C(1); 2015 Permit, Section XXI(A).

41. The Industrial General Permit contains certain absolute prohibitions. The Industrial General Permit prohibits the direct or indirect discharge of materials other than stormwater ("non-stormwater discharges"), which are not otherwise authorized by an NPDES permit, to the waters of the United States. 1997 Permit, Order Part A(1); 2015 Permit, Section III(B). The Industrial General Permit prohibits stormwater discharges that cause or threaten to cause pollution, contamination, or nuisance (1997 Permit, Order Part A(2); 2015 Permit, Sections III(C), VI(C)) and discharges that adversely impact human health or the environment (1997 Permit, Order Part C(1); 2015 Permit, Section VI(B)). Finally, the Industrial General Permit prohibits discharges that cause or contribute to an exceedance of any applicable Water Quality Standard contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan. 1997 Permit, Order Part C(2); 2015 Permit, Section VI(A).

ATA Law Group
490 43rd Street, Suite 108
Oakland CA 94608
916-202-3018

42.     Under the CWA and the Industrial General Permit, dischargers must employ Best Management Practices ("BMPs") that constitute BAT and BCT to reduce or eliminate stormwater pollution. 33 U.S.C. § 1311(b); 1997 Permit, Order Part B(3); 2015 Permit, Section X(H).

43.     Dischargers must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") at the time industrial activities begin. 1997 Permit, Section A(1)(a) and Order Part E(2); 2015 Permit, Sections I(I) (Finding 54), X(B).

## RESOURCE CONSERVATION AND RECOVERY ACT

44.     RCRA prohibits the disposal of solid waste, except at a sanitary landfill or hazardous waste disposal facility. 42 U.S.C. §§ 6945(a), 6903(14).

45.     RCRA defines "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste . . . or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters . . .." *Id*. at § 6903(3).

46.     Under RCRA, the definition of "solid waste" is broad and includes "any garbage, refuse, . . . and other discarded material, including solid, liquid, semisolid or contained gaseous material resulting from . . . agricultural operations . . .." 42 U.S.C. § 6903(27).

47.     The citizen suit provision of RCRA allows for any person to commence a civil action on their own behalf "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972.

## FACTUAL BACKGROUND

48.     The Petaluma River is located in southern Sonoma County and a small portion of northeastern Marin County. The lower twelve miles of the Petaluma River flow through the saline Petaluma Marsh before discharging into San Pablo Bay. The Petaluma Marsh is the largest remaining natural tidal brackish marsh in California. The marsh covers approximately 5,000 acres and is surrounded by approximately 7,000 acres of reclaimed wetlands.

49.    The whole Petaluma River system maintains a variety of marine, estuarine, and freshwater fish species, including salmonids which use it as habitat for spawning, rearing, and migration. The Petaluma River has been identified as critical habitat for many of the protected species found there such as steelhead, Chinook salmon, longfin smelt, and green sturgeon, as well as great egret, California brown pelican, California clapper rail, and California black rail. Many of these species depend specifically on marshlands such as those near Sonoma Horse Park.

50.    Plaintiff is informed and believes that the Petaluma River currently exceeds water quality standards (*i.e.*, is impaired) for several pollutants known to be present at Sonoma Horse Park, including fecal bacteria (*i.e.*, e.coli and enterococci), nitrogen, and phosphorus.

51.    The Petaluma River is used for interstate or foreign commerce and is subject to the ebb and flow of the tide, and is therefore a Water of the United States as defined by the Army Corps of Engineers. 33 C.F.R. § 328.3(a)(1).

52.    Plaintiff is informed and believes that Sonoma Horse Park is located on the bank of the Petaluma River in the middle of the Petaluma Marsh.

53.    Plaintiff is informed and believes that riparian corridors run throughout the Sonoma Horse Park property and feed into the Petaluma River.

54.    Plaintiff is informed and believes that Defendants are the owners and operators of Sonoma Horse Park, and/or Sonoma Horse Park doing Business as Riverside Equestrian Center, located at 7600 Lakeville Highway, Petaluma, CA 94954.

55.    Plaintiff is informed and believes that Sonoma Horse Park confines and feeds horses for a total of 45 days or more in a 12-month period where crops, vegetation, or forage growth are not maintained in the normal growing season.

56.    Plaintiff is informed and believes that Sonoma Horse Park provides stables, show and warm-up arenas, trailer, truck, and RV parking, horse wash areas, temporary bathroom facilities, food trucks, and other similar facilities common to equestrian events.

57.    Plaintiff is informed and believes, and thereon alleges, that Sonoma Horse Park is most commonly used for equestrian events.

58.    Plaintiff is informed and believes that Sonoma Horse Park boards approximately 250 horses every day up to 365 days a year.

59.    Plaintiff is informed and believes that Sonoma Horse Park accommodated at least 5,000 additional horses on the premises for its equestrian show competitions in the 12-month period between September 23, 2017 and September 23, 2018.

60.    Plaintiff is informed and believes that Sonoma Horse Park: accommodates at least 700 horse entries per equestrian show competition, is permitted to accommodate up to 2,000 horses per show, and held eight such shows in both 2017 and 2018.

61.    Plaintiff is informed and believes that between September 23, 2017 and September 23, 2018 horse shows took place at Sonoma Horse Park for a total of 42 days.

62.    Plaintiff is informed and believes that horses are permitted to arrive three days in advance of any event hosted at Sonoma Horse Park and, under the Facility's rules, may be present on site for equestrian show purposes for 60 days total.

63.    Plaintiff is informed and believes that combined with the 250 horses boarded year-round, that Sonoma Horse Park has had, and continues to have, 500 or more horses present for a total 45 days or more in any 12-month period starting at least as early as September 2017.

64.    Plaintiff is informed and believes that Defendants' activities at Sonoma Horse Park have resulted and continues to result in the discharge of process wastewater and stormwater into the Petaluma River.

65.    Plaintiff is informed and believes that Sonoma Horse Park discharges pollutants directly into the Petaluma River when water at the facility flows though the stables and other animal-impacted areas, into drainage ditches, and is then pumped into the river.

66.    Plaintiff is informed and believes that pollutants discharged by Defendants include but are not limited to horse manure, bedding, sediment, equine footing, trash, and other pollutants associated with equine operations.

67.    Plaintiff is informed and believes that during rain events, rain falls onto Sonoma Horse Park and runs through the stables and other animal-impacted areas towards the Petaluma River.

ATA Law Group
490 43rd Street, Suite 108
Oakland CA 94608
916-202-3018

68.    Plaintiff is informed and believes that stormwater comes into direct contact with manure and bedding from the stables and other animal-impacted areas; such water then flows from Sonoma Horse Park into the Petaluma River through man-made pipes, ditches, flushing systems, and a pump house. As this water empties into the river, it carries pollutants such as phosphorus, nitrogen, trash, and fecal bacteria.

69.    Plaintiff is informed and believes that Sonoma Horse Park has illegally discharged stormwater into waters of the United States during every measurable rain event since March 28, 2014.

70.    Plaintiff is informed and believes that some wash racks at Sonoma Horse Park are located no more than five feet from ditches and other conveyances that drain to the Petaluma River.

71.    Plaintiff is informed and believes that during dry weather, process wastewater from horse wash stations may escape the wash racks and the infiltration basin, with pollutants eventually ending up in the Petaluma River.

72.    Plaintiff is informed and believes that during dry weather, process wastewater from horse wash stations and other sources at the Facility is used for dust suppression and is otherwise applied to parking lots, roads, riding areas, and other parts of Sonoma Horse Park.

73.    Plaintiff is informed and believes that discharges from Sonoma Horse Park cause and contribute to the impairment of the Petaluma River.

74.    Plaintiff is informed and believes that Sonoma Horse Park has discharged and continues to discharge process wastewater, other pollutants, and stormwater without an NPDES permit.

75.    Plaintiff is informed and believes that the Owners and Operators of Sonoma Horse Park have never submitted a Notice of Intent to comply with California's Industrial General Stormwater Permit.

76.    Plaintiff is informed and believes, and thereupon alleges, that Sonoma Horse Park operates without protocols for applying manure, litter, or process wastewater in accordance with a nutrient management plan for the facility.

77.    Plaintiff is informed and believes, and thereupon alleges, that Sonoma Horse Park operates without sufficient manure and process wastewater storage.

78.     Plaintiff is informed and believes, and thereupon alleges, that Sonoma Horse Park operates without chemical and contaminant management of manure, litter, process wastewater, and treatment.

79.     Plaintiff is informed and believes, and thereupon alleges, that Sonoma Horse Park operates without protocols for testing manure, litter, process wastewater, and soil.

80.     Plaintiff is informed and believes, and thereupon alleges, that Sonoma Horse Park operates without utilizing best management practices for reduction and control of runoff and storm water to the maximum extent practicable.

81.     Plaintiff is informed and believes, and thereupon alleges, that Sonoma Horse Park operates without proper record keeping.

82.     Based on the foregoing, Plaintiff is informed and believes that the Owners and Operators of Sonoma Horse Park have disposed, handled, or transported, and continue to, dispose, handle, or transport solid wastes, including but not limited to horse manure, bedding, and related debris, and/or own or operate a treatment, storage, and disposal facility that is contributing to the past and present storage and/or disposal of solid and hazardous wastes, including but not limited to horse manure, bedding, and related debris.

83.     Plaintiff is informed and believes that the Sonoma Horse Park Owners and Operators' practice of storing and disposing of liquid and solid manure, bedding, and related debris may present an imminent and substantial endangerment to the health of nearby residents, Baykeeper's members, and the environment.

84.     Plaintiff is informed and believes that Sonoma Horse Park's past and present waste disposal practices have also caused contamination to travel beyond the Facility's boundaries.

**FIRST CAUSE OF ACTION**

**Unlawful Discharge without CWA NPDES Permit, 33 U.S.C. §§ 1311(a), 1342**

85.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though they were set forth in full herein.

86.     Plaintiff is informed and believes, and thereon alleges that Sonoma Horse Park constitutes a Large CAFO within the meaning of 40 C.F.R. § 122.23(4)(vi) because it has had and

ATA Law Group
490 43rd Street, Suite 108
Oakland CA 94608
916-202-3018

1  continues to have over 500 horses present for total 45 days or more in any 12-month period since
2  March 28, 2014.

3         87.    Alternatively, Plaintiff is informed and believes, and alleges that Sonoma Horse Park
4  constitutes a Medium CAFO within the meaning of 40 C.F.R. § 122.23(6), because it has had and
5  continues to have between 150 and 499 horses for total 45 days or more in any 12-month period since
6  March 28, 2014, and because it: (1) discharges "into waters of the United States through a man-made
7  ditch, flushing system, or other similar man-made device"; and/or because (2) "[p]ollutants are
8  discharged directly into waters of the United States which originate outside of and pass over, across,
9  or through the facility or otherwise come into direct contact with the animals confined in the
10 operation."

11        88.    Plaintiff is informed and believes that Sonoma Horse Park is a point source within the
12 meaning of the CWA. 33 U.S.C § 1362(14).

13        89.    Plaintiff is informed and believes that Sonoma Horse Park is engaging and has
14 engaged in industrial activities within the meaning of the CWA. 33 U.S.C. §§ 1311, 1342(p)(2)(B);
15 40 C.F.R. § 122.26.

16        90.    Plaintiff is informed and believes that Defendants have directly discharged and
17 continue to directly discharge process wastewater, and other pollutants, into the Petaluma River.

18        91.    Plaintiff is informed and believes that Defendants have never obtained an NPDES
19 permit for the direct pollutant discharges from Sonoma Horse Park, and are thereby in violation of
20 the CWA. 33 U.S.S. §§ 1311(a), 1342.

21        92.    Plaintiff is informed and believes that Defendants have discharged and continue to
22 discharge contaminated stormwater into the Petaluma River.

23        93.    Plaintiff is informed and believes that Defendants have never obtained an NPDES
24 permit, or coverage under the Industrial General Permit, for the industrial stormwater pollutant
25 discharges from Sonoma Horse Park and are, therefore, in violation of the CWA. 33 U.S.C. §§
26 1311(a), 1342.

27

28

ATA Law Group
490 43rd Street, Suite 108
Oakland CA 94608
916-202-3018

COMPLAINT

94.　　The violations alleged herein are not wholly past violations, are capable of repetition, and are therefore enforceable in this citizen suit action because the violations and other ongoing and continuous violations result from the same underlying and inadequately resolved conduct.

95.　　Each day of the last five years that Defendants have discharged water containing pollutants in violation of the CWA, or otherwise violated the CWA, is a separate and distinct violation of sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

96.　　By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

97.　　An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

98.　　An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## SECOND CAUSE OF ACTION

### Violation of RCRA, 42 U.S.C. § 6972(a)(1)(B)

99.　　Plaintiff incorporates by reference each and every paragraph of this Complaint as though they were set forth in full herein.

100.　　Plaintiff is informed and believes that the Sonoma Horse Park Owners and Operators dispose, generate, and transport solid and hazardous wastes, including but not limited to horse manure, bedding, and related debris, and/or operate a treatment, storage, and disposal facility that is contributing to the past and present storage and/or disposal of solid and hazardous wastes, including but not limited to horse manure, bedding, and related debris.

101.　　Plaintiff is informed and believes that through their ownership and operation of Sonoma Horse Park, Defendants are a past, present, and future generator of "solid waste" within the meaning of RCRA. 42 U.S.C. § 6903(27).

ATA Law Group
490 43rd Street, Suite 108
Oakland CA 94608
916-202-3018

102.    Plaintiff is informed and believes that the Defendants' practice of storing and disposing of liquid and solid manure, bedding, and related debris may present an imminent and substantial endangerment to the health of nearby residents, Baykeeper's members, and the environment within the meaning of 42 U.S.C. § 6972(a)(1)(B).

103.    Plaintiff is informed and believes that Sonoma Horse Park Owners' and Operators' past and ongoing practice of storing and disposing of solid wastes, including liquid and solid manure, bedding, and related debris, violates RCRA, 42 U.S.C. § 6945(a).

104.    An action for injunctive relief is authorized by RCRA, 42 U.S.C. § 6972(a). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

105.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## REMEDY

106.    Plaintiff has no plain, speedy, or adequate remedy, in the ordinary course of law, other than the relief sought in this Complaint, because there is no other mechanism for compelling Defendants to take the action necessary under the CWA to abate their unlawful discharge of pollutants to waters of the United States, and to take action under RCRA to abate Defendants' unlawful disposal of solid waste.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.    A Court order declaring Defendants to have violated and continue to be in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311, for their unpermitted discharges of process wastewater and other pollutants into the Waters of the Unites States, including the Petaluma River, in violation of the substantive and procedural requirements of the CWA;

b.    A Court order enjoining Defendants from further violating the substantive and procedural requirements of Section 301(a) of the CWA, § 1311(a), for unlawful and unpermitted discharges of process wastewater and other pollutants into the Waters of the Unites States, including into the Petaluma River;

c. A Court order declaring Defendants to have violated and continue to be in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311, for unpermitted discharges of stormwater into the Waters of the Unites States, including the Petaluma River, in violation of the substantive and procedural requirements of the CWA;

d. A Court order enjoining Defendants to restore all receiving waters damaged by Defendants' illegal discharges of pollutants from the Facility;

e. A Court order enjoining Defendants from further violating the substantive and procedural requirements of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for unlawful and unpermitted discharges of stormwater into the Waters of the Unites States, including into the Petaluma River;

f. Order Defendants to pay civil penalties of up to $51,570 per day per CWA violation pursuant to section 309(d) of the CWA, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary penalties for Inflation, 40 C.F.R. § 19.4;

g. A Court order awarding Plaintiff their reasonable costs of suit, including attorney, witness, expert, and consultant fees, as permitted by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), RCRA, 42 U.S.C. § 7002(e), and any other applicable theory or law;

h. A Court order declaring Defendants to have violated and to be in violation of RCRA as alleged herein;

i. A Court order enjoining Defendants from disposing of solid waste from Sonoma Horse Park in such ways as may pose an imminent and substantial endangerment to health or the environment;

j. A Court order enjoining Defendants to remove and lawfully dispose of the solid waste they have unlawfully deposited and continue to unlawfully deposit into the environment; and

k. Award such other relief as this Court may deem appropriate.

## **DEMAND FOR JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial in this matter.

ATA Law Group
490 43rd Street, Suite 108
Oakland CA 94608
916-202-3018

## DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Based on Plaintiff's knowledge to date, pursuant to Civil Local Rule 3-16, the undersigned certifies that, as of this date, other than the names parties, there is not such interest to report.


DATED: September 6, 2019                                    AQUA TERRA AERIS LAW GROUP


                                                           /s/ Jason R. Flanders
                                                           _____
                                                           Jason R. Flanders
                                                           Attorneys for Plaintiff
                                                           San Francisco Baykeeper

ATA Law Group
490 43rd Street, Suite 108
Oakland CA 94608
916-202-3018